IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

PAULA JOHNSON,

Plaintiff,

v.

LELAND CHERRY
and JAMES MISTER,

Defendants.                                                   No. 02-CV-1231-DRH

## MEMORANDUM and ORDER

HERNDON, District Judge:

### I. Introduction and Background

Now before the Court is Clinite's petition for quantum meruit attorney's fees and expenses (Docs. 77 & 67). Attorney Jeffery Green opposes the motion (Doc. 82). The Court heard oral argument on June 1, 2006. Based on the following the Court grants in part Clinite's petition.

A detailed background of the facts of the case as to Clinite's discharge is set forth in the Seventh Circuit's opinion. **See *Johnson v. Cherry*, 422 F.3d 540 (7th Cir. 2005)**. After Clinite's discharge, Johnson retained the services of attorney Jeffery Green on December 6, 2004 (Doc. 47). Over a year later, the parties informed the Court that the case settled and the case was dismissed with prejudice on January 20, 2006 (Doc. 70).

## II. **Quantum Meruit Recovery**

"Under Illinois law, a client may discharge an attorney at any time, with or without cause." ***Rhoades v. Norfolk and Western Railway Co.*, 399 N.E.2d 969, 974 (Ill. 1979)**. The discharged attorney is not entitled to recover fees from the former client pursuant to the contract but rather is limited to recovery, in *quantum meruit,* of a reasonable fee for the services rendered. ***Id*. at 974-75**. Recovery in *quantum meruit* is premised on the implied promise of a recipient of services to pay for services that are of value to him, on the theory that he would be unjustly enriched if he retained the benefit of the services without paying for them. ***In re Estate of Callahan,* 578 N.E.2d 985, 988 (Ill. 1991)**. The attorney's action for *quantum meruit* recovery "accrues immediately after discharge." ***Id.*** Further, *quantum meruit* recovery is available even when an attorney is discharged for cause. ***Johns v. Klecan*, 556 N.E.2d 689, 696 (Ill. App. 1990)**.

Under the theory of *quantum meruit*, the trial court is literally to award the attorney "'as much as [s]he deserves.'" ***Kannewurf v. Johns*, 632 N.E.2d 711, 717 (Ill. App. 1994)(quoting *Lee v. Ingalls Memorial Hospital*, 597 N.E.2d 747 (Ill. App. 1992))**. The trial judge has broad discretion in making this determination. ***Kannerwurf*, 632 N.E.2d at 716**. In making this determination, the trial court should assess all of the relevant factors, including the time and labor required, the attorney's skill and standing, the nature of the cause, the novelty and difficulty of the subject matter, the attorney's degree of responsibility in managing the case, the usual

and customary charge for that type of work *in the community*, and the benefits resulting to the clients. **Id. at 717**.

Here, Clinite seeks *quantum meruit* attorney's fees and expenses in this case. Her documents in support demonstrate that she is seeking $786.93 in costs/expenses and $16,575 in attorney fees (Docs. 77 & 67).[1] In her petition, she merely argues that prior to Plaintiff Johnson discharging her from the case she obtained a settlement offer for $20,000; that it appears no further discovery was done by attorney Green and that he contributed little to the settlement of this action. During oral argument, Clinite conceded that she did not expect the full lodestar amount that she placed in her petition and when asked what she felt was the amount she "deserved" under a "*quantum meruit*" theory, she replied that she felt $6,666.00 was appropriate, even though she knew the Court was not to make a contract award. She confirmed that she originally held a one-third contingent fee contract and the figure she requested is what she would have recovered from her contractual agreement with her former client. She also felt it appropriate to be reimbursed in total for all her out-of-pocket expenses. When asked about the progress of the case under Ms. Clinite, she indicated she took all of the depositions that could be taken, except one, Officer Cherry, the first named Defendant, who she says defense counsel offered he was not aware of his location. She did not offer her own explanation of

---

[1] In support of her petition, Clinite submitted an affidavit and a list of expenses and fees she incurred in this litigation (Doc. 67). Her affidavit states that she has considerable experience in handling such cases as Paula Johnson's; that her hourly rate is $170 an hour; and that through her work and effort she obtained a settlement offer of $20,000. The list of expenses and fees reveals that Clinite worked a total of 97.50 hours on Johnson's case prior to discharge.

any efforts on her part to discover the location of this primary defendant.

Ms. Clinite when questioned about the readiness of the case initially suggested it was ready for trial and when pressed then advised that it was not a case that was compensable under Section 1983 because of a lack of a "physical touching" component.[2] Despite that infirmity, she was confident that she would be able to receive an offer twice the $20,000.00 offer she ultimately received. In fact, she was quite confident in her lawyering abilities in general and in this district in specific, citing a $400,000.00 judgment. Upon checking with the members of the bench in this district relative to her standing in this legal community, the undersigned could not substantiate Ms. Clinite's sense of value as counsel to her clients.

Green argues that he spent about 11 months trying to settle this case and trying to obtain Johnson's file (which Clinite has possession of and will not release). Green argues that after extensive negotiations conducted with the United States Courts of Appeals Settlement Conference Office he essentially had to settle this case with Johnson's mother's case; **Parks v. Harrison, 02-1038-WDS,** which was on appeal at the time. Green further contends that Clinite's conduct and the lingering effect of the retaining lien hindered his abilities to settle the case. Mr. Green revealed that the discussion surrounding this case with the defendants'

---

[2]In general, a plaintiff who proves a violation of her constitutional rights is not entitled to damages without proof of actual injury resulting from the violation. ***Memphis Community School District v. Stachura*, 477 U.S. 299, 306-307 (1986)**. "[n]ominal damages, of which $1 is the norm, are an appropriate means of vindicating rights whose deprivation has not caused actual, provable injury." ***Kyle v. Patterson*, 196 F.3d 695, 697 (7th Cir. 1999)(citing *Memphis Community Sch. Dist.*, 477 U.S. 306-307)**.

counsel and the offer of which Ms. Clinite is now so proud actually revealed that it was no longer on the table and the defendants knew that Mr. Green was in a difficult position because Ms. Clinite was pressing her retaining lien and not turning over her file to Mr. Green. As a consequence, with the state of the record in the Parks case (having to prosecute an appeal against summary judgment motions) and trying to pursue a case from a position of weakness in the Johnson case, he was in a tremendous position of weakness. On the other hand, from their position of strength, the defendants insisted that any settlement must include both cases and the settlement coordinator for the Seventh Circuit, Joel Shapiro, objectively opined that the plaintiffs should seriously consider the offers then on the table in those negotiations in Chicago. Mr. Green insists that Ms. Clinite's representation and actions following her discharge actually put such constraints on this case (and the Parks case) that it adversely affected his ability to obtain a better recovery for his clients. The Court agrees with Mr. Green. It is one thing to have a legal right to impress a retaining lien, but quite another to hamper a client's ability to successfully pursue her case, just to insure payment. Perfecting a lien with the ultimate payor so that her name is on the settlement draft would be adequate protection for her lien. The consequence of her standing on her legal right is that her client has suffered financially. As a counter, she argued that she offered to negotiate her fee and security for it, upon payment of her expenses. Plaintiff's current counsel disputes her alleged offer to work things out. The Court does not find Ms. Clinite credible. Based on Mr. Green's representation and the letter which Ms. Clinite showed the

Court, the Court believes that Ms. Clinite required the payment of the lodestar fee plus her expenses before she would turn over her file to Mr. Green. Clearly an unreasonable position, given her demand for a sixteen thousand plus dollar attorney fee, in a case with limited value, especially when its progress is being held hostage by such an unreasonable demand.

So the issue remains, what does Ms. Clinite deserve. One analysis that occurs to the Court is to suggest that Ms. Johnson's secretarial services provided to Ms. Clinite balanced against Ms. Clinite's legal services provide a "wash," leaving neither person owing anything to the other. Ms. Clinite said the secretarial services were a "favor," and Mr. Green said those services are the subject of a Department of Labor inquiry. The Court will leave those matters to the agency whose expertise are better suited to resolve them. Ms. Clinite does not deserve the six thousand plus dollars she said she is entitled to. While she did receive an offer to settle this case, Ms. Clinite did not have the confidence of her client to consummate the settlement. Her client discharged her. Thereafter, Ms. Johnson's new lawyer had many, many difficulties getting the case settled, mostly because of his inability to construct a working file. So he settled the case because of his work not Ms. Clinite's. Had she cooperated and turned over her file and the discovery, she could easily have claimed the settlement was due in large part to her work product. She cannot claim any credit for the settlement. The new lawyer was caused to start from scratch and the result was his not his predecessor's. So all of the work Ms. Clinite did was for naught as it did not contribute one bit to the resolution to the case. But she did

render some legal services to her client. She took depositions that surely gave the defendants some pause as they analyzed this case. She took five depositions, including sitting in on the Plaintiff's deposition, according to her response to the Court at oral argument. For that productivity and perhaps some other intangible good she surely must have done for this case, the Court awards Ms. Clinite $1,500.00 in attorney's fees.

The Court takes umbrage with Ms. Clinite's choice of transportation to this area in terms of the reasonableness of expense, but reluctantly cannot quarrel with her stated reason. Therefore, the Court finds her expenses to be fair and reasonable and awards her the balance of $786.93 for said expenses.

### III.  Conclusion

Accordingly, the Court **GRANTS in part** Clinite's petition for quantum meruit attorney fees and expenses (Doc. 77). The Court **AWARDS** Clinite $786.93 in costs and $1,500.00 in fees for a total of $2,286.93.

**IT IS SO ORDERED.**

Signed this 2nd day of June, 2006.

/s/        David    RHerndon
**United States District Judge**